UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PAMELA A. BECK                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 3:25CV-603-JHM

SCHUYLER JOHN *et al.*                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela A. Beck filed the instant *pro se* action.  She also filed a motion to proceed *in forma pauperis* (DN 3).  Upon review, **IT IS ORDERED** that the motion to proceed *in forma pauperis* (DN 3) is **GRANTED**.

This matter is now before the Court on initial review of the complaint (DN 1) and the amended and supplemental complaint (DN 8) pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  Upon review, the instant action will be dismissed for the reasons that follow.

## I. SUMMARY OF FACTUAL ALLEGATIONS

In the complaint, Plaintiff sues the following Defendants:  Schuyler John; Donald Ridge; Jason Kron; Tim Ratliff; Kentucky Bourbon Barrel, LLC; J.R.R. Investments, LLC; Louisville Jefferson County Metro Government (hereinafter "LMG"); and Chad Hess, a code enforcement officer employed by LMG.  She sues Hess in his individual and official capacities.

Plaintiff alleges in the complaint that she has owned her property in Louisville, Kentucky, since 2008.  She asserts that Defendants Kron, Ratliff, Ridge, John, Kentucky Bourbon Barrel, LLC, and J.R.R. Investments, LLC (hereinafter "the Private Actor Defendants") are "private actors who own or operate properties adjacent to Plaintiff's residence."  She states, "Defendants acquired surrounding lots in 2018 and began operating trucking/logistics activities

adjacent to Plaintiff's property, including placement of semi-trailers along her fence line on the east side of her property."[1]  She continues, "The initial trailer placement obstructed Plaintiff's property, but no expressive activity was being conducted at that time."  Plaintiff states, "In August 2025, Plaintiff began a public legal advocacy campaign to raise awareness about ongoing litigation and systemic issues. . . . Plaintiff displayed a 110" poster board on her front porch with case citations, arrows pointing to the trailers, and QR codes directing viewers to advocacy resources."  She reports, "The porch campaign successfully increased visibility of her legal claims and public awareness."  Plaintiff asserts that she "identified her east-side fence as a secondary, optimal location for legal advocacy signage, intended to further public awareness about her pending cases and systemic violations."  She states, "The trailers and signage of private defendants now completely block visibility of the entire east side of her property, including her home and privacy fence, preventing Plaintiff from displaying her advocacy signage."

Plaintiff asserts that on September 17, 2025, she "sent formal emails to Defendant Hess, with copies to the mayor's office and relevant city council members, documenting the trailers' obstruction of her expressive signage on her fence and porch, including photographs."  She continues, "Plaintiff demanded removal of the trailers or corrective action to restore her ability to exercise First Amendment rights. . . . Despite this clear, written notice, Defendant Hess failed to respond or take any corrective action, demonstrating deliberate indifference to Plaintiff's constitutional rights."  Plaintiff states, "Following Plaintiff's porch campaign, private Defendants increased the number of trailers along Plaintiff's fence from three to ten, effectively walling off visibility of her house and signage."  She maintains, "This timing and coordination demonstrates deliberate action to obstruct Plaintiff's expressive activity, relying on Hess and Metro's inaction

---

[1] The Court omits the emphases used by Plaintiff throughout the complaint herein.

to shield their conduct." She continues, "The deliberate obstruction and continued inaction have substantially impaired Plaintiff's ability to communicate with the public, creating a chilling effect on her legal advocacy and political expression."

Plaintiff alleges a claim for "First Amendment Retaliation/Obstruction (Against Private Defendants via Joint Action with State Actor)." She states, "Private Defendants, acting in concert with Hess and Metro, intentionally obstructed Plaintiff's expressive signage, continuing this obstruction after written notice of constitutional violation." She further maintains, "Defendants' actions constitute retaliation against Plaintiff's protected legal advocacy, in violation of the First and Fourteenth Amendments. . . . The obstruction is deliberate, willful, and intended to chill Plaintiff's expression, as evidenced by the timing and coordination with her porch campaign and fence advocacy."

Plaintiff alleges a second claim she labels, "42 U.S.C. § 1983/Deliberate Indifference (Hess & Metro)." She states, "Hess and Metro officials, upon written notice of the obstruction, failed to act, demonstrating deliberate indifference to Plaintiff's constitutional rights. . . . This deliberate indifference transformed the private actors' conduct into state-facilitated suppression, actionable under §1983."

In the amended and supplemental complaint (DN 8), Plaintiff adds Cindy Calvelo, another code enforcement officer employed by LMG, as a Defendant in her individual and official capacities. She states that on September 18, 2025, "the day immediately following the filing of Plaintiff's Complaint," Defendant Calvelo arrived at Plaintiff's residence. She states that she and her "Pro Se Legal Assistant" Anthony Lovell Smith were seated on her front porch with a "110-inch poster board reading 'PAMELA A. BECK V. CENTRAL COMMERCE PARK, LLC, NO. 25-CI-005162, TRUCK LAWSUIT' with arrows pointing directly at the

obstructing trailers positioned along her east-side fence." Plaintiff states that Defendant Calvelo "observed this active First Amendment expressive activity and the obstruction it identified before and during her official inspection." She reports that Defendant Calvelo "conducted a visual inspection of both Plaintiff's property and the adjacent property controlled by private Defendants" and took photos of the semi-trailers. Plaintiff states that when Smith asked Defendant Calvelo about the nature of her visit, Defendant Calvelo stated, "'I'm just here to see if these trailers are in compliance,' acknowledging her awareness of the trailer configuration that Plaintiff's poster was actively protesting." She further asserts as follows:

> Mr. Smith expressly informed Officer Calvelo of the constitutional violation detailed in Plaintiff's September 17 email to Defendant Hess, specifically explaining that the trailer placement obstructed Plaintiff's intended use of her east-side fence for First Amendment expressive activity, including legal advocacy signage designed to raise public awareness about ongoing litigation and systemic procedural violations. Officer Calvelo acknowledged receiving this information and understanding that Plaintiff's constitutional rights were being violated, even as she observed Plaintiff's active constitutional expression occurring simultaneously on the front porch. . . .

> Despite witnessing Plaintiff's active First Amendment expression in progress, observing the obstruction that expression was protesting, having clear authority as a Metro Zoning Enforcement Officer to investigate and remedy zoning violations that obstruct property owners' constitutional rights, and receiving explicit notice of the constitutional violation from Mr. Smith, Officer Calvelo deliberately chose to take no remedial action to protect Plaintiff's ongoing First Amendment rights. Instead, she departed the premises with full knowledge of the constitutional violation occurring before her eyes, leaving the obstructive trailer configuration intact and providing only her official business card. This conduct constitutes deliberate indifference to active constitutional violations under color of state law.

Plaintiff further reports that on September 19, 2025, "less than forty-eight (48) hours after Plaintiff filed her Complaint and approximately twenty-four (24) hours after Officer Calvelo's official inspection, private Defendants abruptly removed five (5) of the ten (10) semi-trailers that had been positioned along Plaintiff's east-side fence line." She states, "The timing and selective nature of this removal—occurring immediately after Metro's official inspection but affecting

only half the obstructive trailers—demonstrates Defendants' awareness of both Plaintiff's legal action and Metro's involvement in the matter." She states that five trailers remain on the adjacent property "continuing to substantially obstruct Plaintiff's ability to display advocacy signage visible to the public from the adjoining street and sidewalk."

Plaintiff asserts, "The sequence of events—Complaint filing, immediate Metro inspection, and prompt partial trailer removal—establishes a pattern of coordinated conduct between private Defendants and Louisville Metro officials that transforms private obstruction into state-facilitated suppression of protected speech." She continues, "Private Defendants' responsive conduct demonstrates their reliance on Metro's deliberate inaction as governmental acquiescence to their constitutional violations, confirming the joint action necessary for § 1983 liability." She states that LMG's "choice to dispatch Officer Calvelo to inspect the premises immediately after receiving Plaintiff's Complaint, followed by deliberate inaction by both Hess and Calvelo despite direct notice of the First Amendment violation, constitutes official endorsement of the ongoing obstruction and establishes a pattern of deliberate indifference to citizens' constitutional rights."

Further, Plaintiff asserts that the "the temporal proximity between [LMG's] inspection and Defendants' partial compliance, combined with [LMG's] deliberate choice to take no corrective action despite express notice of constitutional violations, establishes the 'close nexus' and 'concert of action' required for § 1983 liability against private actors." She also states, "The deployment of Officer Calvelo following Plaintiff's written notice to Officer Hess demonstrates an official Metro response that, through deliberate inaction by both officers despite direct notice of constitutional violations, established a municipal custom of acquiescence to First Amendment violations." In addition, she maintains, "The immediate sequence of Metro's inspection

following Plaintiff's Complaint, followed by Defendants' selective and partial removal of exactly half the obstructive trailers, evidences both retaliatory intent and acknowledgment of wrongdoing."[2]

As relief, Plaintiff seeks preliminary and permanent injunctive relief, compensatory and punitive damages, and other relief.

## II. STANDARD

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e); *McGore*, 114 F.3d at 608-09. Upon review, the Court must dismiss a case at any time if it determines that an action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). This Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, the duty "does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint

---

[2] In the amended and supplemental complaint, Plaintiff adds claims labeled: "Coordinated Retaliation and Deliberate Indifference (All Defendants)"; "Individual Liability for Deliberate Indifference (Hess and Calvelo)"; "Municipal Custom of Constitutional Indifference (Metro Government)"; and "Private Defendants' Joint Action with State Officials." The Court finds these claims are repetitive of the claims alleged in the original complaint.

in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

### III. ANALYSIS

Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under § 1983 must therefore allege two elements: (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Absent either element, no § 1983 claim exists. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. The Private Actor Defendants

Plaintiff alleges that the Private Actor Defendants have parked semi-trailers along her fence line so that signs she has posted expressing her protected speech[3] are being hidden from view and that this violates her First Amendment to right to freedom of speech. She also alleges that this conduct constitutes retaliation in violation of the First Amendment.

Plaintiff acknowledges in her pleadings that the Private Actor Defendants are in fact private parties. Private parties may be held liable under § 1983 only if they are "state actor[s]" that operated under "under color of law" such that their "private conduct is fairly attributable to the state." *Moldowan v. City of Warren*, 578 F.3d 351, 399-400 (6th Cir. 2009). Plaintiff maintains that the Private Actor Defendants should be considered state actors because they

---

[3] The Court presumes for the purposes of this initial review only that the signs constitute protected speech under the First Amendment.

coordinated with the government based on Defendants Hess's and Calvelo's inspections of the premises and their failure to remedy the alleged First Amendment violation. Whether a party is a state actor is a question of law. *Blum v. Yaretsky*, 457 U.S. 991, 996-98 (1982). While the Court is required to construe a *pro se* complaint broadly, as stated above, the Court is not required to accept Plaintiff's legal conclusions concerning whether these Private Actor Defendants were state actors for § 1983 purposes. *See Tackett*, 561 F.3d at 488. At the initial review stage under § 1915(e), as at the motion to dismiss stage, the plaintiff has the burden "to advance historical and factual allegations in their complaint giving rise [to] a reasonable inference that [the private conduct] is traditionally exclusively in the province of the State." *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (citation omitted).

The Sixth Circuit generally uses three tests for determining whether a private actor may be treated as a state actor: "the public-function test, the state-compulsion test, and the nexus test." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

The public-function test "'requires that the private [entity] exercise powers which are traditionally **exclusively** reserved to the state.'" *Carl*, 763 F.3d at 595 (emphasis added) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). Examples of such functions are holding elections, exercising eminent domain, or providing medical care in a correctional facility. *See Nugent v. Spectrum Health Servs.*, 72 F.4th 135, 140-41 (6th Cir. 2023). The Sixth Circuit has held that "we interpret the public-function test narrowly, and under it we rarely attribute private conduct to the state." *Id.* Plaintiff does not allege facts to support that LMG or any other governmental entity exclusively establishes and runs trucking enterprises. Therefore, Plaintiff fails to allege that the Private Actor Defendants are state actors under this test.

"The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state." *Memphis, Tenn. Area Loc., Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). This requires "[m]ore than mere approval or acquiescence in the initiatives of the private party." *Wolotsky*, 960 F.2d at 1335. There is no factual basis presented in the pleadings to support that LMG or any other governmental entity compelled, significantly encouraged, or coerced the Private Actor Defendants to take the allegedly unconstitutional action. As such, Plaintiff has failed to allege state action under the state compulsion test.

Under the nexus test, also referred to as the symbiotic test, which Plaintiff seems to rely on predominantly, "there must be a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 757 (6th Cir. 2023). Such a nexus requires "intimat[e] involve[ment]" by the state in the challenged action. *Wolotsky*, 960 F.2d at 1335. "[M]ere cooperation simply does not rise to the level of merger required for a finding of state action." *Marie*, 771 F.3d at 363 (citing *Lansing v. City of Memphis*, 202 F.3d 821, 831 (6th Cir. 2000)). The nexus "can be established with evidence of a customary or preexisting arrangement between the government and the private actor." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006) (citing *Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir. 1982)). "Merely because a business is subject to state regulation does not by itself convert its action into state action . . . . Rather, it must be demonstrated that the state is intimately involved in the challenged private conduct in

order for that conduct to be attributed to the state for purposes of section 1983." *Wolotsky*, 960 F.2d at 1335 (citations omitted).

Plaintiff alleges that Defendants LMG, Hess, and Calvelo have the authority to regulate the Private Actor Defendants through zoning enforcement of their property, that Calvelo did inspect the property, and that they failed to stop the Private Actor Defendants from violating Plaintiff's First Amendment rights.  Plaintiff alleges that the "sequence of events—Complaint filing, immediate Metro inspection, and prompt partial trailer removal" and the "temporal proximity" between the inspection and the removal of some trailers establish coordinated conduct between the Private Actor Defendants and LMG.  However, these allegations are based only on Plaintiff's speculation of coordinated conduct and do not offer facts that support a reasonable or plausible inference to support state action.  Plaintiff's allegations amount to no more than cooperation, which is insufficient to allege state action.  She has failed to plead sufficient facts to show that LMG was "intimately involved" in the Private Actor Defendants' decision to park the semi-trailers along Plaintiff's fence line to obstruct her signs or that any customary or preexisting arrangement existed such that the obstruction of her signs could be fairly attributed to LMG.  In sum, the Court finds Plaintiff's allegations of state action on the part of the Private Actor Defendants are insufficient as they are not accompanied by any plausible set of supporting facts.  *See Iqbal*, 556 U.S. at 678.  Therefore, Plaintiff has failed to allege state action under the nexus test.

Accordingly, Plaintiff's § 1983 claims against the Private Actor Defendants under the First Amendment for violation of her right to freedom of speech and for retaliation must be dismissed for failure to state a claim upon which relief may be granted.

### B. Defendant LMG and official-capacity claims against Defendants Hess and Calvelo

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Therefore, Plaintiff's official-capacity claims against Defendants Hess and Calvelo are actually brought against their employer, LMG. *Id*. at 165.

A municipality, such as LMG, cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiff does not identify any policy or custom of LMG that was the motivating force for the Private Actor Defendants to park their semi-trailers along her fence line. To the extent Plaintiff alleges LMG should be liable based on the failure of Defendants Hess or Calvelo to take any action, a municipality cannot be held liable under § 1983 under a *respondeat superior* theory, or the right to control employees. *Monell*, 436 U.S. at 691; *Searcy*, 38 F.3d 286; *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is

11

designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*). Plaintiff's complaint appears to allege occurrences affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). Therefore, Plaintiff's claim against LMG and her official-capacity claims against Hess and Calvelo must be dismissed for failure to state a claim upon which relief may be granted.

### C. Individual-capacity claims against Defendants Hess and Calvelo

Plaintiff alleges Defendants Hess and Calvelo showed "deliberate indifference" to her constitutional rights. Courts have recognized § 1983 "deliberate indifference" claims in the context of a government employee's or official's deliberate indifference to an individual's safety or serious medical needs. However, there is not a recognized claim for deliberate indifference to an individual's rights under the First Amendment.

The First Amendment prohibits the government from abridging the freedom of speech. U.S. Const. amend. I. Moreover, retaliation for the exercise of a constitutional right is itself a violation of the First Amendment actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (per curiam). To state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff alleges that Defendants Hess and Calvelo violated her constitutional rights by failing to act after she notified them that her signs were obstructed. She does not allege that Defendant Hess or Calvelo themselves directed the semi-

trailers be parked to obstruct her signs or to retaliate against her. Therefore, Plaintiff's First Amendment claims against Defendants Hess and Calvelo must be dismissed for failure to state a claim upon which relief may be granted.

Moreover, assuming for the purposes of this initial review that Defendants Hess or Calvelo, as LMG code enforcement officers, had the authority to investigate or correct the Private Actor Defendants' violation of Plaintiff's First Amendment rights, citizens have no constitutional or federal statutory right to compel the investigation of another person. *Ruffin v. Milacheck*, No. 5:22CV-P159-JHM, 2023 U.S. Dist. LEXIS 91248, at *6 (W.D. Ky. May 24, 2023) (citing, *inter alia*, *Diamond v. Charles*, 476 U.S. 54 (1986)); *see also Jacoby v. PREA Coordinator*, No. 5:17-cv-00053-MHH-TMP, 2017 U.S. Dist. LEXIS 107831, at *10 (N.D. Ala. Apr. 4, 2017) ("Whether an inadequate investigation, or the failure to investigate at all, no § 1983 liability is created."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 106774 (N.D. Ala. July 11, 2017). Therefore, Plaintiff's claims based on Defendants Hess's and Calvelo's failure to investigate or correct a violation of her First Amendment rights must be dismissed for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

Accordingly, the Court will enter a separate Order dismissing the action and denying the pending motions as moot.[4]

Date:    September 25, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiffs, *pro se*
4414.010

---

[4] Plaintiff filed a motion for a temporary restraining order and preliminary injunction (DN 7), a notice of escalating constitutional violations and motion for prompt ruling (DN 10), and an emergency notice of escalating irreparable harm (DN 11), which the Court has considered.

13